## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON DUX, SpecialAdministrator of the ESTATE OF JOHN SCOTT DUX, deceased, | ) ) ) | No. |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate: |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT AT LAW

NOW COMES the plaintiff, SHANNON DUX, Special Administrator of the Estate

of JOHN SCOTT DUX, deceased, by and through her attorneys, COGAN & McNABOLA, P.C.,

and complaining of the defendant, UNITED STATES OF AMERICA, says:

**Count I - Survival Action**

1.    This is an action brought pursuant to the Federal Tort Claims Act.

2.    The plaintiff has rejected the offer made by the defendant on or about September

30, 2011, and it is more than 6 months after the administrative claim was filed with the

Department of Veterans Affairs.   (See Claim Form 95 attached hereto as Exhibit "A").

3.    The plaintiff has exhausted all administrative remedies as required by 28 U.S.C.

§§1346(b), 2401(b) 2671-80.

4.    JOHN SCOTT DUX was a military veteran who lived in Glen Ellyn, DuPage

County, Illinois.

5.    In December, 2009, JOHN SCOTT DUX was advised by agents and employees

of the United States at Hines Hospital located in Cook County, Illinois that he had prostate

cancer based on biopsy results from a TURP that John Scott Dux had undergone at that facility secondary to an enlarged prostate.

6.     As a result of the diagnosis of cancer, on or about February 9, 2010, agents and employees of the UNITED STATES OF AMERICA at Hines Hospital performed a radical prostatectomy upon JOHN SCOTT DUX.

7.     The radical prostatectomy JOHN SCOTT DUX underwent was unnecessary.

8.     JOHN SCOTT DUX did not have prostate cancer.

9.     Agents and employees of the UNITED STATES OF AMERICA incorrectly diagnosed JOHN SCOTT DUX with prostate cancer.

10.     Agents and employees of the UNITED STATES OF AMERICA mistakenly switched the tissue from the JOHN SCOTT DUX biopsy with the tissue from another patient's biopsy. As a result, JOHN SCOTT DUX, underwent a radical prostatectomy which should not have been performed.

11.     The UNITED STATES OF AMERICA, by and through its agents and employees, had a duty to diagnose JOHN SCOTT DUX based on tissue from his biopsy and not tissue from another patient's biopsy.

12.     The UNITED STATES OF AMERICA, by and through its agents and employees, had a duty to perform surgery on JOHN SCOTT DUX, based on the analysis of tissue from his biopsy rather than the analysis of tissue from another patient's biopsy.

13.     The UNITED STATES OF AMERICA, by and through its agents and employees, at Hines Hospital, breached its duty and was negligent in one or more of the following respects:

a. Switched the tissue from the JOHN SCOTT DUX biopsy with the tissue from another patient's biopsy;

b. Incorrectly diagnosed JOHN SCOTT DUX with prostate cancer based on tissue taken from another patient;

c. Performed unnecessary surgery on JOHN SCOTT DUX based on biopsy results from another patient;

d. Failed to have and appreciate chain of custody in place for the tissue taken from JOHN SCOTT DUX biopsy;

e. Failed to have appropriate policies and procedures in place so that tissue from one patient's biopsy is not switched with tissue from another patient's biopsy;

f. Failed to properly identify JOHN SCOTT DUX biopsy tissue samples; and

g. Was otherwise negligent.

14. As a proximate result of one or more of the above negligent acts, JOHN SCOTT DUX endured pain and suffering and he incurred medical bills.

15. In addition, JOHN SCOTT DUX suffered from loss of normal life, disability and disfigurement, with impairment of urinary and sexual function.

16. JOHN SCOTT DUX died on September 24, 2010.

17. SHANNON DUX is the duly appointed Special Administrator of the Estate of JOHN SCOTT DUX. (See "Exhibit B").

18. As the Special Administrator, Ms. Dux brings this claim which has survived the death of JOHN SCOTT DUX.

19. Attached hereto as Exhibit "C" is an Affidavit and Medical Report submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

-3-

WHEREFORE, the plaintiff, SHANNON DUX, Special Administrator of the Estate of JOHN SCOTT DUX, deceased, demands judgment against the defendant, UNITED STATES OF AMERICA, in a sum in excess of the jurisdictional limit of SEVENTY FIVE THOUSAND AND 00/100 ($75,000.00) dollars, plus costs.

## Count II - Wrongful Death

1-13.   Plaintiff repeats and realleges paragraphs 1-13 of Count I as paragraphs 1-13 of Count II.

14.   As a proximate result of the injuries JOHN SCOTT DUX suffered due to the negligence of the UNITED STATES OF AMERICA, by and through its agents and employees, JOHN SCOTT DUX became increasingly depressed and angry.

15.   As a proximate result of the injuries JOHN SCOTT DUX suffered due to the negligence of the UNITED STATES OF AMERICA, by and through its agents and employees, JOHN SCOTT DUX committed suicide on September 24, 2010.  (See Death Certificate attached hereto as Exhibit "D" and Amended Claim Form 95 attached hereto as Exhibit "E").

16.   Due to the negligence of the UNITED STATES OF AMERICA which proximately caused the death of JOHN SCOTT DUX, SHANNON DUX has suffered a pecuniary loss and a loss of JOHN SCOTT DUX's society and companionship.

17.   SHANNON DUX is the duly appointed Special Administrator of the Estate of JOHN SCOTT DUX, deceased.

18.   SHANNON DUX, Special Administrator of the Estate of JOHN SCOTT DUX, deceased, brings this action for wrongful death.

-4-

19. Attached hereto as Exhibit "F" is an Affidavit and Medical Report submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

WHEREFORE, the plaintiff, SHANNON DUX, Special Administrator of the Estate of JOHN SCOTT DUX, deceased, demands judgment against the defendant, UNITED STATES OF AMERICA, in a sum in excess of the jurisdictional limit of SEVENTY FIVE THOUSAND AND 00/100 ($75,000.00) dollars, plus costs.

_____
Attorney for Plaintiff

Michael P. Cogan, Esq.
COGAN & MCNABOLA, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
(312) 629-2900
#61280126

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 EXPIRES 3-31-91 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| DEPARTMENT OF VETERANS AFFAIRS REGIONAL COUNSEL (02) P.O. BOX 1427 VA HOSPITAL HINES, IL 60141 | John Scott Dux Represented by: Michael P. Cogan, Esq. Cogan & McNabola, P.C. 55 W. Wacker Drive, Suite 900, Chicago, IL. 60601 |

| 3. TYPE OF EMPLOYMENT SEE ATTACHED ☒ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 09/02/47 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT On or about February 9, 2010 | 7. TIME (A.M. OR P.M.) Unknown |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)

See attached.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See attached.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Dr. Berger | Hines V.A. Hospital, Hines, IL. |
| Unknown physicians & technicians | Hines V.A. Hospital, Hines, IL. |

| 12. (See Instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY $8,000,000.00 | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See Instructions on reverse side.) | 13b. Phone number of signatory (312) 629-2900 | 14. DATE OF CLAIM 04/07/10 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

| 95-108 Previous editions not usable. | NSN 7540 | **PLAINTIFF'S EXHIBIT A** | STANDARD FORM 95 (Rev. 7-85) PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|---|

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items - Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? ☐ Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. ☐ No |
|---|
| N/A |

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| N/A | |

| 18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)* |
|---|
| N/A |

| 19. Do you carry public liability and property damage insurance? ☐ Yes, if yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* ☐ No |
|---|
| No. |

## Attachment To Form 95 - Question Nos:

3.     Mr. Dux was formerly in the military, but on the date of the occurrence, he was a civilian.

8.     In November or December of 2009, John Dux went in for an appointment at Hines
       Veteran's Hospital and his PSA was determined to be 4.85. John's physician at the
       Hospital recommended a prostate biopsy which went forward on December 30, 2009,
       following which John was informed that 10 out of the 12 biopsy specimens were positive
       for prostate cancer. For this reason, a radical prostatectomy was scheduled and went
       forward on February 9, 2010. John had a somewhat shaky post-operative course, spent
       some time in the ICU, received two blood transfusions, but was eventually discharged to
       home after being told that he would be called with the pathology results from the radical
       prostatectomy, which would determine how aggressive the prostate cancer was.

       On February 17, 2009, John returned to the Hospital and had surgical staples removed
       and his drainage port taken out. He was told by a Dr. Berger (female) that he would be
       called with the biopsy results.

       Within a few days, John received a call at home from Dr. Berger who advised that there
       had been an error made in connection with the initial biopsy and that John's specimen
       had been switched with the specimen of another patient. She advised John that he never
       did have cancer and that the radical prostatectomy was totally unnecessary.

10.    As a result of having undergone the unnecessary radical prostatectomy, John will have to
       wear adult diapers for the rest of his life to deal with urine leakage, he is unable to obtain
       or retain an erection and he constantly leaks urine when not wearing his diapers. As a
       result of this inexcusable catastrophe, John has had difficulty sleeping, has suffered an
       increases in the intensity and number of anxiety attacks that pre-existed his surgery and
       he describes himself as "depressed". He also suffered post-radical prostatectomy pain
       and suffering and loss of his normal life.

1

LETTER OF OFFICE - DECEDENT'S ESTATE                                    3705 (Rev 02/10)

| STATE OF ILLINOIS | UNITED STATES OF AMERICA IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT | COUNTY OF DU PAGE |
|---|---|---|

IN RE THE ESTATE OF

**2010 P 884**

**CASE NUMBER**

FILED
10 OCT 21 PM 3: 37
CLERK OF THE CIRCUIT
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

F I L E D

**JOHN SCOTT DUX**
DECEASED

**LETTER OF OFFICE
DECEDENT'S ESTATE**

File Stamp Here

SHANNON DUX

has been appointed **SPECIAL ADMINISTRATOR** of the

estate of **JOHN SCOTT DUX** , deceased

who died **09/24/2010** , and is authorized to take possession of and collect the estate of the decedent, and to do

all acts required of **HER** by law, pursuant to order of Court entered **10/18/2010**

by Judge **THOMAS C. DUDGEON** .

**WITNESS: CHRIS KACHIROUBAS,** Clerk of the Eighteenth
Judicial Circuit Court, and the seal thereof, Wheaton, Illinois

**OCTOBER 21, 2010**
Date

Clerk of the Eighteenth Judicial Circuit

**CERTIFICATE**

I certify that this is a copy of the Letters of Office now in force and effect on this date in this estate

**OCT 2 5 2010**
Date

Clerk of the Eighteenth Judicial Circuit

Name: OLDFIELD, FOX & SARNA, P.C.

DuPage Attorney Number: 62771

Attorney for: PETITIONER

Address: 2021 MIDWEST ROAD, SUITE 201

City/State/Zip: OAK BROOK, IL 60523

Telephone Number: (630) 495-3377

By: Deputy Clerk

CHRIS KACHIROUBAS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT ©



PLAINTIFF'S
EXHIBIT
B

August 9, 2010



RE: Mr. John Dux

Dear Mr. Cogan:

This letter is regarding Mr. John Dux who underwent an evaluation for an abnormal PSA test that resulted in an incorrect diagnosis of prostate cancer. Based on that finding he was counseled about undergoing a radical prostatectomy to treat this problem. Unfortunately, his biopsy was incorrect and re-review did not reveal prostate cancer although a very small amount was detected on the final prostate specimen.

Gerald W. Chodak, M.D., F.A.C.S.
Director

Midwest Prostate & Urology Health Center
4646 North Marine Drive
Suite A 5500
Chicago, Illinois 60640

Appointments: 773-564-5006
Cell phone: 312-969-2989
Fax: 773-564-5007
Home: 773-486-5974
www.1prostatecancer.com
E-mail: gchodak1@aol.com

As a consequence of this treatment, he is now living with very troubling side effects. This has been documented by his completion of the "Expanded Prostate Cancer Index Composite, or EPIC. This is a validated survey used throughout the world for assessing quality of life following prostate cancer therapies. According to the responses, Mr. Dux currently has significant impairment in urinary, bowel, and sexual function. Over the past four weeks, he has had frequent urinary dribbling and urinary leakage requiring the use of two protective pads per day. He rates his urinary function as a "big problem". In addition, he has moderate problems with pelvic/rectal pain, increased frequency of bowel movements and loose stools. He rates these as a "moderate problem." He also reports a complete inability to have an erection, sexual intercourse or an orgasm over the past four weeks, which he rates as a "big problem."

Although no pre-treatment survey is available, he was not complaining of those problems prior to his diagnosis. Some or all of these complaints may resolve within 18-24 months of surgery. For that reason, one cannot yet assess if these symptoms will persist permanently. Regardless, his quality of life has been severely affected.

Mr. Dux is said to have been relieved when informed that he had cancer detected on the final pathology report. However, this does not mean the operation was in any way justified. At his age, more than one-third of the adult male population in the United States has microscopic prostate cancer but less than 3% of them are at risk from the disease. The standard of care is to not do a radical prostatectomy as a prophylactic treatment, which means the operation was not justified.

Sincerely,

Gerald Chodak, M.D.



PLAINTIFF'S
EXHIBIT
C



This questionnaire is designed to measure Quality of Life issues in patients with Prostate cancer. To help us get the most accurate measurement, it is important that you answer all questions honestly and completely.

Remember, as with all medical records, information contained within this survey will remain strictly confidential.

Today's Date (please enter date when survey completed): Month __7__ Day __19__ Year __2010__

Name (optional): _John Scott Chas_

Date of Birth (optional): Month __09__ Day __02__ Year __47__

Page 2

## URINARY FUNCTION
This section is about your urinary habits. Please consider ONLY THE LAST 4 WEEKS.

1. Over the **past 4 weeks**, how often have you leaked urine?

More than once a day...................(1)
About once a day............................ 2
More than once a week...................3     (Circle one number)
About once a week...........................4
Rarely or never...............................5

23/

2. Over the **past 4 weeks**, how often have you urinated blood?

More than once a day.................... 1
About once a day............................ 2
More than once a week...................3     (Circle one number)
About once a week...........................4
Rarely or never...............................(5)

24/

3. Over the **past 4 weeks**, how often have you had pain or burning with **urination**?

More than once a day.................... 1
About once a day............................ 2
More than once a week...................3     (Circle one number)
About once a week...........................4
Rarely or never...............................(5)

25/

4. Which of the following best describes your urinary control **during the last 4 weeks**?

No urinary control whatsoever........... ............................1
Frequent dribbling.......................................................(2)     (Circle one number)
Occasional dribbling.................................................... 3
Total control................................................................ 4

26/

EPIC 2.2002

Copyright 2002. The University of Michigan. All rights reserved.

Do Not
Mark in
This
Space

5. How many pads or adult diapers <u>per day</u> did you usually use to control leakage **during the last 4 weeks?**

| | | |
|---|---|---|
| None ........................................................... | 0 | |
| 1 pad per day............................................. | 1 | |
| 2 pads per day............................................ | (2) | (Circle one number) |
| 3 or more pads per day................................ | 3 | 27/ |

6. How big a problem, if any, has each of the following been for you **during the last 4 weeks?**

(Circle one number on each line)

| | | No Problem | Very Small Problem | Small Problem | Moderate Problem | Big Problem | |
|---|---|---|---|---|---|---|---|
| a. | Dripping or leaking urine ......... | 0 | 1 | 2 | 3 | (4) | 28/ |
| b. | Pain or burning on urination..... | (0) | 1 | 2 | 3 | 4 | 29/ |
| c. | Bleeding with urination............. | (0) | 1 | 2 | 3 | 4 | 30/ |
| d. | Weak urine stream or incomplete emptying........... | 0 | 1 | 2 | 3 | (4) | 31/ |
| e. | Waking up to urinate.............. | 0 | (1) | 2 | 3 | 4 | 32/ |
| f. | Need to urinate frequently during the day ................................. | 0 | 1 | 2 | 3 | (4) | 33/ |

7. Overall, how big a problem has your urinary function been for you **during the last 4 weeks?**

| | | |
|---|---|---|
| No problem...................................... | 1 | |
| Very small problem........................... | 2 | |
| Small problem................................... | 3 | (Circle one number) |
| Moderate problem............................ | 4 | 34/ |
| Big problem...................................... | (5) | |

EPIC 2.2002

Copyright 2002. The University of Michigan. All rights reserved.

Case: 1:11-cv-07142 Document #: 1 Filed: 10/10/11 Page 14 of 31 PageID #:14

Page 4

Do Not
Mark in
This
Space

## BOWEL HABITS
The next section is about your bowel habits and abdominal pain.
Please consider ONLY THE LAST 4 WEEKS.

8. How often have you had rectal urgency (felt like I had to pass stool, but did not) **during the last 4 weeks?**

More than once a day....................... 1
About once a day............................ 2
More than once a week.................... 3          (Circle one number)
About once a week........................ (4)
Rarely or never................................ 5

42/

9. How often have you had uncontrolled leakage of stool or feces?

More than once a day....................... 1
About once a day............................. 2
More than once a week.................... 3          (Circle one number)
About once a week............................4
Rarely or never............................. (5)

43/

10. How often have you had stools (bowel movements) that were loose or liquid (no form, watery, mushy) **during the last 4 weeks?**

Never................................................ 1
Rarely............................................... 2
About half the time........................... 3          (Circle one number)
Usually........................................... (4)
Always..............................................5

44/

11. How often have you had bloody stools **during the last 4 weeks?**

Never................................................1
Rarely.............................................. (2)
About half the time........................... 3          (Circle one number)
Usually............................................. 4
Always..............................................5

45/

EPIC 2.2002          Copyright 2002. The University of Michigan. All rights reserved.

12. How often have your bowel movements been painful **during the last 4 weeks?**

Never.................................................. 1

Rarely................................................. 2

About half the time...........................(3)   (Circle one number)   46/

Usually............................................... 4

Always................................................ 5

13. How many bowel movements have you had on a typical day **during the last 4 weeks?**

Two or less......................................(1)

Three to four.....................................2   (Circle one number)   47/

Five or more......................................3

14. How often have you had crampy pain in your abdomen, pelvis or rectum **during the last 4 weeks?**

More than once a day...................... 1

About once a day............................. 2

More than once a week.................... 3   (Circle one number)   48/

About once a week.........................(4)

Rarely or never................................. 5

15. How big a problem, if any, has each of the following been for you? (Circle one number on each line)

|   | | No Problem | Very Small Problem | Small Problem | Moderate Problem | Big Problem | |
|---|---|---|---|---|---|---|---|
| a. | Urgency to have a bowel movement | 0 | (1) | 2 | 3 | 4 | 49/ |
| b. | Increased frequency of bowel movements | 0 | 1 | 2 | (3) | 4 | 50/ |
| c. | Watery bowel movements | 0 | 1 | 2 | (3) | 4 | 51/ |
| d. | Losing control of your stools | 0 | (1) | 2 | 3 | 4 | 52/ |
| e. | Bloody stools | 0 | (1) | 2 | 3 | 4 | 53/ |
| f. | Abdominal/ Pelvic/Rectal pain | 0 | 1 | 2 | (3) | 4 | 54/ |

16. Overall, how big a problem have your bowel habits been for you **during the last 4 weeks?**

No problem........................................ 1

Very small problem........................... 2

Small problem.................................... 3   (Circle one number)   55/

Moderate problem...........................(4)

Big problem....................................... 5

EPIC 2.2002

Copyright 2002. The University of Michigan. All rights reserved.

**SEXUAL FUNCTION**
The next section is about your current sexual function and sexual satisfaction. Many of the
questions are very personal, but they will help us understand the important issues that
you face every day. Remember, THIS SURVEY INFORMATION IS COMPLETELY CONFIDENTIAL.
Please answer honestly about THE LAST 4 WEEKS ONLY.

17. How would you rate each of the following during the last 4 weeks? (Circle one number on each line)

| | Very Poor to None | Poor | Fair | Good | Very Good | |
|---|---|---|---|---|---|---|
| a. Your level of sexual desire? | (1) | 2 | 3 | 4 | 5 | 56/ |
| b. Your ability to have an erection? | (1) | 2 | 3 | 4 | 5 | 57/ |
| c. Your ability to reach orgasm (climax)? | (1) | 2 | 3 | 4 | 5 | 58/ |

18. How would you describe the usual QUALITY of your erections **during the last 4 weeks**?

None at all..................................................................... (1)
Not firm enough for any sexual activity................................... 2
Firm enough for masturbation and foreplay only.......................... 3    (Circle one number)    59/
Firm enough for intercourse................................................ 4

19. How would you describe the FREQUENCY of your erections **during the last 4 weeks**?

I NEVER had an erection when I wanted one................................ (1)
I had an erection LESS THAN HALF the time I wanted one............. 2
I had an erection ABOUT HALF the time I wanted one ................... 3    (Circle one number)    60/
I had an erection MORE THAN HALF the time I wanted one............ 4
I had an erection WHENEVER I wanted one................................ 5

20. How often have you awakened in the morning or night with an erection **during the last 4 weeks**?

Never ............................................................................ (1)
Less than once a week....................................................... 2
About once a week............................................................ 3    (Circle one number)    61/
Several times a week......................................................... 4
Daily.............................................................................. 5

EPIC 2.2002          Copyright 2002. The University of Michigan. All rights reserved.

21. **During the last 4 weeks**, how often did you have <u>any</u> sexual activity?

Not at all............................................................ ①
Less than once a week.......................................... 2
About once a week.............................................. 3          (Circle one number)          62/
Several times a week........................................... 4
Daily.................................................................. 5

22. **During the last 4 weeks**, how often did you have sexual intercourse?

Not at all............................................................ ①
Less than once a week.......................................... 2
About once a week.............................................. 3          (Circle one number)          63/
Several times a week........................................... 4
Daily.................................................................. 5

23. Overall, how would you rate your ability to function sexually **during the last 4 weeks**?

Very poor........................................................... ①
Poor.................................................................. 2
Fair.................................................................. 3          (Circle one number)          64/
Good.................................................................. 4
Very good........................................................... 5

24. How big a problem **during the last 4 weeks**, if any, has each of the following been for you?

(Circle one number on each line)

|   | | No Problem | Very Small Problem | Small Problem | Moderate Problem | Big Problem | |
|---|---|---|---|---|---|---|---|
| a. | Your level of sexual desire........ | 0 | 1 | 2 | 3 | ④ | 65/ |
| b. | Your ability to have an erection. | 0 | 1 | 2 | 3 | ④ | 66/ |
| c. | Your ability to reach an orgasm. | 0 | 1 | 2 | 3 | ④ | 67/ |

25. Overall, how big a problem has your sexual function or lack of sexual function been for you **during the last 4 weeks?**

No problem............................................. 1
Very small problem.................................... 2
Small problem.......................................... 3          (Circle one number)          68/
Moderate problem..................................... 4
Big problem............................................. ⑤

EPIC 2.2002

Copyright 2002. The University of Michigan. All rights reserved.

Case: 1:11-cv-07142 Document #: 1 Filed: 10/10/11 Page 18 of 31 PageID #:18

Page 8

Do Not
Mark in
This
Space

## HORMONAL FUNCTION
The next section is about your hormonal function. Please consider ONLY THE LAST 4 WEEKS.

**26. Over the last 4 weeks,** how often have you experienced hot flashes?

More than once a day...................... 1

About once a day............................ 2

More than once a week................... 3          (Circle one number)          69/

About once a week...........................4

Rarely or never.............................(5)

**27.** How often have you had breast tenderness **during the last 4 weeks?**

More than once a day...................... 1

About once a day............................ 2

More than once a week................... 3          (Circle one number)          70/

About once a week...........................4

Rarely or never.............................(5)

**28. During the last 4 weeks,** how often have you felt depressed?

More than once a day...................(1)

About once a day............................ 2

More than once a week................... 3          (Circle one number)          71/

About once a week...........................4

Rarely or never............................... 5

**29. During the last 4 weeks,** how often have you felt a lack of energy?

More than once a day...................(1)

About once a day............................ 2

More than once a week................... 3          (Circle one number)          72/

About once a week...........................4

Rarely or never............................... 5

**30.** How much change in your weight have you experienced **during the last 4 weeks,** if any?

Gained 10 pounds or more.............1

Gained less than 10 pounds ...........2

No change in weight......... ..........(3)          (Circle one number)          73/

Lost less than 10 pounds ...............4

Lost 10 pounds or more..................5

EPIC 2.2002          Copyright 2002. The University of Michigan. All rights reserved.

Do Not
Mark in
This
Space

**31.** How big a problem **during the last 4 weeks**, if any, has each of the following been for you?

(Circle one number on each line)

| | No Problem | Very Small Problem | Small Problem | Moderate Problem | Big Problem | |
|---|---|---|---|---|---|---|
| a. Hot flashes.......................... | (0) | 1 | 2 | 3 | 4 | 74/ |
| b. Breast tenderness/enlargement.. | (0) | 1 | 2 | 3 | 4 | 75/ |
| c. Loss of Body Hair...................... | (0) | 1 | 2 | 3 | 4 | 76/ |
| d. Feeling depressed..................... | 0 | 1 | 2 | 3 | (4) | 77/ |
| e. Lack of energy........................... | 0 | 1 | 2 | 3 | (4) | 78/ |
| f. Change in body weight | 0 | (1) | 2 | 3 | 4 | 79/ |

---

**Overall Satisfaction**

**32.** Overall, how satisfied are you with the treatment you received for your prostate cancer?

Extremely dissatisfied.............................. (1)
Dissatisfied................................................ 2
Uncertain.................................................. 3        (Circle one number)        80/
Satisfied.................................................... 4
Extremely satisfied................................... 5

**THANK YOU VERY MUCH!!**

Copyright 2002. The University of Michigan. All rights reserved.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON DUX, SpecialAdministrator of the ESTATE OF JOHN SCOTT DUX, deceased, | ) ) ) | No. |
| Plaintiff, | ) | |
| v. | ) | Magistrate: |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT

1.     Your affiant has consulted with and reviewed the facts of the case with a health professional who the affiant reasonably believes is knowledgeable in the relevant issues involved in this particular action, practices within the last six years in the same area of health care or medicine that is at issue in this particular action and is qualified by experience in the subject of this case.

2.     Your affiant concludes, based on consulting with the above-described individual, that there is a reasonable and meritorious cause for the filing of this action.

3.     The reviewing health professional has determined in a written report, after a review of the medical records described in said report that there is a reasonable and meritorious cause for the filing of such action.

4.     The reviewing health professional is licensed to practice medicine in Illinois and is board certified in urology.


FURTHER YOUR AFFIANT SAITH NOT.

Michael P. Cogan

SUBSCRIBED and SWORN before
me this 6th day of October, 2011.

NOTARY PUBLIC

Official Seal
Kimberly M Stefanek
Notary Public State of Illinois
My Commission Expires 03/23/2015

# CERTIFICATION OF DEATH RECORD

## DUPAGE COUNTY HEALTH DEPARTMENT
## WHEATON, ILLINOIS
## MEDICAL EXAMINER/CORONER CERTIFICATE OF DEATH

STATE FILE NUMBER 2010 0069323    MEDICAL EXAMINER'S CASE NUMBER 092710PH7    DATE ISSUED 09/27/2010

| DECEDENT'S LEGAL NAME JOHN SCOTT DUX | | SEX MALE | DATE OF DEATH SEPTEMBER 24, 2010 |
|---|---|---|---|

| COUNTY OF DEATH DU PAGE | AGE AT LAST BIRTHDAY 63 YEARS | DATE OF BIRTH SEPTEMBER 02, 1947 |
|---|---|---|

| CITY OR TOWN GLEN ELLYN | HOSPITAL OR OTHER INSTITUTION NAME 445 N PARK BLVD |
|---|---|

PLACE OF DEATH DECEDENT'S HOME

| BIRTHPLACE CHICAGO, IL | SOCIAL SECURITY NUMBER 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 | MARITAL STATUS AT TIME OF DEATH DIVORCED | SURVIVING SPOUSE'S NAME | EVER IN U.S. ARMED FORCES? YES |
|---|---|---|---|---|

| RESIDENCE 445 N PARK BLVD | APT. NO. 2H | CITY OR TOWN GLEN ELLYN | INSIDE CITY LIMITS? YES |
|---|---|---|---|

| COUNTY DU PAGE | STATE IL | ZIP CODE 60137 | FATHER'S NAME JOHN C DUX | MOTHER'S NAME PRIOR TO FIRST MARRIAGE REVELLE MORROW |
|---|---|---|---|---|

| INFORMANT'S NAME SHANNON R DUX | RELATIONSHIP DAUGHTER | MAILING ADDRESS 8965 CAREFUL CANVAS AVENUE, LAS VEGAS, NV, 89149 |
|---|---|---|

| METHOD OF DISPOSITION CREMATION | PLACE OF DISPOSITION TRISONS CREMATORY | LOCATION - CITY OR TOWN AND STATE LOMBARD, IL | DATE OF DISPOSITION SEPTEMBER 27, 2010 |
|---|---|---|---|

FUNERAL HOME LEONARD MEMORIAL HOME, 565 DUANE ST., GLEN ELLYN, IL, 60137

| FUNERAL DIRECTOR'S NAME CRAIG T WHEATLEY | FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER 034015803 |
|---|---|

| LOCAL REGISTRAR'S NAME MAUREEN T MCHUGH | DATE FILED WITH LOCAL REGISTRAR SEPTEMBER 27, 2010 |
|---|---|

CAUSE OF DEATH    PART I    PENDING INVESTIGATION

IMMEDIATE CAUSE (Final disease or condition resulting in death)

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

Due to (or as a consequence of):

Due to (or as a consequence of):

Due to (or as a consequence of):

| PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I | WAS AN AUTOPSY PERFORMED? NO |
|---|---|
| | WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? N/A |

| DID TOBACCO USE CONTRIBUTE TO DEATH? | FEMALE PREGNANCY STATUS NOT APPLICABLE | MANNER OF DEATH PENDING INVESTIGATION |
|---|---|---|

| DATE OF INJURY | TIME OF INJURY | PLACE OF INJURY | INJURY AT WORK? |
|---|---|---|---|

LOCATION OF INJURY

| DESCRIBE HOW INJURY OCCURRED: | IF TRANSPORTATION INJURY, SPECIFY: |
|---|---|

| ATTEND THE DECEASED? | DATE LAST SEEN ALIVE | WAS MEDICAL EXAMINER OR CORONER CONTACTED? | DATE PRONOUNCED SEPTEMBER 24, 2010 | TIME OF DEATH 11:03 AM |
|---|---|---|---|---|

| CERTIFIER MEDICAL EXAMINER/CORONER | DATE CERTIFIED SEPTEMBER 27, 2010 |
|---|---|

| NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH PETER A SIEKMANN, 414 N. COUNTY FARM ROAD, WHEATON, IL, 60187 | PHYSICIAN'S LICENSE NUMBER |
|---|---|

This is to certify that this is a true and correct copy from the official death record filed with the Illinois Department of Public Health.



Maureen T. McHugh
Maureen T. McHugh
Local Registrar

Not v...        al of the
D...        ...ment.

PLAINTIFF'S EXHIBIT
▷

ANY ALTERATION        THIS CERTIFICATE

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| Submit To Appropriate Federal Agency:<br><br>Department of Veteran's Affairs<br>Regional Counsel (02)<br>P.O. Box 1427<br>Hines, IL. 60141 | 2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*<br><br>Shannon Dux, Special Administrator of the Estate of John Scott Dux, deceased.<br>Represented by: Michael P. Cogan/Cogan & McNabola, P.C., 55 W. Wacker Drive, Suite 900, Chicago, IL. 60601 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>[X] MILITARY [X] CIVILIAN<br>*See Attached* | 4. DATE OF BIRTH<br>09/02/47 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>On or about February 9, 2010 | 7. TIME *(A.M. or P.M.)*<br>Unknown |
|---|---|---|---|---|

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

See attached.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See attached.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* | |
| See attached witness list. | | |

| 12. *(See instructions on reverse)* | AMOUNT OF CLAIM *(In dollars)* | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
| 0.00 | 4,000,000.00 | 5,000,000.00 | 9,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory<br>312/629-2900 | 14. DATE OF CLAIM<br>01/18/11 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

**PLAINTIFF'S EXHIBIT E**

95-109<br>*Previous editions not usable.*

NSN 7540-00

STANDARD FORM 95 (Rev. 7-85) (EG)<br>*PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 .F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? ☐ Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. ☐ No |
|---|
| N/A |

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| N/A | |

| 18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*) |
|---|
| N/A |

| 19. Do you carry public liability and property damage insurance? ☐ Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) ☐ No |
|---|
| No. |

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175

## Attachment To Form 95 - Question Nos:

3.  Mr. Dux was formerly in the military, but on the date of the occurrence, he was a civilian.

8.  In November or December of 2009, John Dux went in for an appointment at Hines Veteran's Hospital and his PSA was determined to be 4.85. John's physician at the Hospital recommended a prostate biopsy which went forward on December 30, 2009, following which John was informed that 10 out of the 12 biopsy specimens were positive for prostate cancer. For this reason, a radical prostatectomy was scheduled and went forward on February 9, 2010. John had a somewhat shaky post-operative course, spent some time in the ICU, received two blood transfusions, but was eventually discharged to home after being told that he would be called with the pathology results from the radical prostatectomy, which would determine how aggressive the prostate cancer was.

On February 17, 2009, John returned to the Hospital and had surgical staples removed and his drainage port taken out. He was told by a Dr. Berger (female) that he would be called with the biopsy results.

Within a few days, John received a call at home from Dr. Berger who advised that there had been an error made in connection with the initial biopsy and that John's specimen had been switched with the specimen of another patient. She advised John that he never did have cancer and that the radical prostatectomy was totally unnecessary.

In the months following the unnecessary prostatectomy, Mr. Dux became increasingly depressed and his post-traumatic stress disorder became increasingly unmanageable. He sought treatment for his severe depression and post-traumatic stress syndrome from physicians and therapists at Hines Veteran's Hospital. He repeatedly reported feeling "very upset" and experienced feelings of anger, grief and mistrust of medical personnel. As a result of the complications from the unnecessary radical prostatectomy, his relationship with his girlfriend, Signe Noth, became dysfunctional and he advised friends that he was tired of "living like this". He developed suicidal ideation, with a plan of shooting himself. During this time, he was noted to have increased his alcohol intake in an attempt to deal with his depression brought about by the complications of his unnecessary surgery. Finally, unable to deal with the depression and anger surrounding his condition, Mr. Dux shot himself in the head on September 24, 2010. (See "Report of Postmortem Examination and Death Certificate" attached hereto as Exhibit "B").

Dr. Stephen Dinwiddie, Professor of Psychiatry at the University of Chicago, has reviewed the medical records of Mr. Dux from Hines Veteran's Hospital, the Police Report and the Autopsy Report. A copy of Dr. Dinwiddie's curriculum vitae is attached hereto as Exhibit "C"). Dr. Dinwiddie has formed the opinion that as a result of the unnecessary surgery and the anger, increased depression and impact on Mr. Dux's pre-existing post-traumatic stress syndrome, that he was driven to suicide. (See Exhibit "D"). Dr. Dinwiddie will be called upon if this matter does not resolve by way of settlement and proceeds to trial.

10. As a result of having undergone the unnecessary radical prostatectomy, John had to wear adult diapers for the remainder of his life to deal with urine leakage, he was unable to obtain or retain an erection and he constantly leaked urine when not wearing his diapers. As a result of this inexcusable catastrophe, John had difficulty sleeping, suffered an increase in the intensity and number of anxiety attacks that pre-existed his surgery and he described himself as "depressed". He also suffered post-radical prostatectomy pain and suffering and loss of his normal life.

As set forth above, Mr. Dux shot himself in the head and died on September 24, 2010. On that date, he left surviving his adult daughter, Shannon Dux, who is the court-appointed Independent Administrator of the Estate of John Scott Dux (See Exhibit "E"). Shannon Dux has suffered a loss of her father's society and companionship as a proximate cause of his death.

Finally, attached hereto as Exhibit "F", is a copy of the Police Report prepared following the death of Mr. Dux.

11. **Witnesses:**

| | **Address** |
|---|---|
| Shannon Dux | 8965 Careful Canvas Ave., Las Vegas, NV. |
| Dr. Berger | Hines V.A. Hospital, Hines, IL. |
| Larry Oldfield | 2021 Midwest Road, Suite 201, Oakbrook, IL. 60523 |
| Signe Noth | 733 W. Hawthorne Blvd., Wheaton, IL. 60187 |
| Responding police officers & detectives | Glen Ellyn Police Department, 535 Duane Street, Glen Ellyn, IL. |
| Unknown Physicians & Technicians | Hines V.A. Hospital, Hines, IL. |
| Dr. Gerald Chodak (uro/oncologist). | 4646 N. Marine Drive, Suite A5500, Chicago, IL. 60640 See attached report attached hereto as Exhibit "G". A copy of Dr. Chodak's curriculum vitae is attached hereto as Exhibit "H". |
| Dr. Stephen Dinwiddie | 5841 S. Maryland, MC3077, Chicago, IL. 60637 |
| James A. Filkins, M.D.J.D. | 414 N. County Farm Road, Wheaton, IL. 60187 |

**NOTE:** Medical records were previously filed along with the original Claim Form 95 of April 7, 2010. If additional copies are required, please so advise. In addition, we have enclosed "Psychiatric Records" recently received from Hines V.A. Hospital, attached hereto as Exhibit "I".

# COGAN & McNABOLA, P.C.

ATTORNEYS AT LAW

PERSONAL REPRESENTATIVE (DECEASED)/MED.MALPRACTICE

Michael P. Cogan
Mark E. McNabola
Edward W. McNabola
John M. Power

Theodore C. Jennings
James P. Navarre
Jon C. Papin
Patti L. Tuttle

*Of counsel*
Deborah B. Cogan*
Debra K. Marcus

* Admitted in NY

## I. CONTINGENCY FEE

I, **Shannon Dux, Individually, and as Representative of the Estate of John Scott Dux**, Deceased, hereby employ and appoint COGAN & McNABOLA, P.C. as attorneys for **Estate of John Scott Dux, Deceased**, to represent said estate in the investigation, litigation, prosecution, including trial, arbitration and/or settlement of said estate's cause of action against U.S.A. and/or Hines V.A.Hospital, arising out of an occurrence on **September 24, 2010 and on or about February 9, 2010**. I agree to pay COGAN & McNABOLA, P.C. as compensation for their services, and hereby assign to them twenty-five percent (25%) of any sum obtained or recovered therefrom by suit, settlement or otherwise. Attorneys' fees equal to the present cash value of recoveries, per the foregoing ratios, shall be payable immediately upon the conclusion of litigation and not as periodic payments. Any legal time spent on any appeal and/or post-trial issues will be billed on an hourly basis pursuant to a separate negotiated written agreement.

## II. CASE EXPENSE

I, Shannon Dux, Individuallly and as Representative of the Estate of John Scott Dux, Deceased, hereby authorize COGAN & MCNABOLA, P.C. to incur reasonable expenses in connection with the investigation, settlement, adjustment, or prosecution of said cause with interest to accrue at the current interest rate at the financial institution of Fifth Third Bank per annum on the outstanding balance and agree to reimburse COGAN & MCNABOLA, P.C. actual expenses incurred in the prosecution of said cause out of the proceeds of settlement or verdict only.

## III. DISCHARGE

In the event that I request COGAN & MCNABOLA, P.C. to withdraw as my attorney prior to the resolution of my claim, suit, settlement, or otherwise, I hereby agree to pay COGAN & MCNABOLA, P.C., at the rate of four hundred fifty dollars ($450.00) per hour or their customary hourly rate for the time which they have spent in connection with my claim, or 25% of the amount being offered by parti(es) responsible and/or their insurers at the time of request to withdraw, which ever is greater. Further, if any dispute arises under the contract, I (We) agree to have the dispute decided by the Rules of the American Arbitration Association with the cost to be charged to the losing party.

## IV. REFERRING ATTORNEY

I fully understand and consent to the fact that Larry Oldfield, Esq. will receive ~~10%~~ 40% of Cogan & McNabola, P.C.'s statutory fee and that said attorney has agreed to assume the same legal responsibility for the performance of the legal services as COGAN & McNABOLA, P.C. assumes. The client does not pay any additional fee.

SIGNED in Chicago, Illinois this 5th day of October, 2010.

Shannon Dux, Individually, and as Personal
Representative of the Estate of John Scott Dux,
deceased

We hereby agree to assume professional responsibility in the above cause entrusted to us and to charge no fee unless recovery is had and to make no settlement without the consent of our client(s).

COGAN & McNABOLA, P.C.

BY:



THE UNIVERSITY OF
CHICAGO
MEDICAL CENTER

DEPARTMENT OF PSYCHIATRY
& BEHAVIORAL NEUROSCIENCE

MC3077
5841 South Maryland Avenue
Chicago, Illinois 60637-1470

January, 11, 2011

JAN 14 2011

By_____

Michael Cogan
Cogan and McNabola PC
55 W. Wacker Drive, Suite 900
Chicago, IL  60601

**RE: John S. Dux**

Dear Mr. Cogan:

I have reviewed police reports and medical records of John Scott Dux.  Mr. Dux was a 63 year-old-man with a prior history of depressive illness and alcohol abuse, who was being treated through the VA system for Posttraumatic Stress Disorder, attributed to both a history of sexual abuse as a child and to his experiences during the Vietnam War.  Medical records indicate a history of suicidal ideation in the past, and two suicide attempts (albeit of low lethality), the most recent occurring sometime in his 40's.  Although he remained moderately symptomatic, he apparently was fairly stable through 2009; a period of suicidal rumination in August of that year appears to have resolved rapidly.

He was informed early in 2010 that he had prostatic cancer and in early February of that year underwent a radical prostatectomy, which left him sexually impotent and with urinary incontinence (which required use of a diaper), results which would have been particularly difficult to cope with given his previous "macho" self-image.  About two weeks later he was informed that the surgery had been performed in error because of a mix-up of pathology specimens.  Even before the operation (on 1/29/10) he had expressed misgivings about his ability to cope with a poor surgical outcome.  Following the procedure and the news of the laboratory error, he was described by different treaters at different times as feeling "very upset" and experiencing feelings of anger, grief and mistrust of medical personnel.  It is particularly noteworthy that despite a long history of mental health treatment, Mr. Dux did not resume psychotherapy after the operation and had no mental health treatment in the 5 months prior to his death.

According to police records, for at least the month prior to his suicide, Mr. Dux exhibited symptoms of recurrent depression, stating he was tired of "living like this", and had again developed suicidal ideation, with a plan of shooting himself.  During that time he was noted also to have been drinking heavily, another risk factor for suicide.

On the night of Mr. Dux' suicide, he got into an argument with another driver and apparently hit or slapped a passenger in the other car.  According to police reports, the victim was not interested in pursuing a complaint for battery.  However, Mr. Dux was sure that he would be arrested and, later that night, took his own life by shooting himself in the head.

Based on this information, it is clear that Mr. Dux's prior psychiatric history placed him at substantially elevated risk for suicide.  After the operation his depressive symptoms recurred and substantially



EXHIBIT
F

AT THE FOREFRONT OF MEDICINE

worsened; during this time there is good evidence that he was ruminating on the complications of the operation. At the same time, the unnecessary prostate surgery and its complications led him to distance himself from further treatment. Thus, the unnecessary procedure and the attendant sexual impotence and urinary incontinence played a significant causal role in his decision to take his life by contributing to his depressive relapse while simultaneously undermining his trust in medical caregivers, making it less likely that he would seek help. The worsening depression appears to have been further complicated by excessive drinking and the combination led to markedly impaired judgment as evidenced by his altercation on the night of his death, his subsequent misinterpretation of the consequences of that event, and the decision to commit suicide at that time.

Sincerely,

Stephen H. Dinwiddie, M.D.
Professor of Psychiatry and Behavioral Neuroscience

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON DUX, SpecialAdministrator of the ESTATE OF JOHN SCOTT DUX, deceased, | ) ) ) | |
| | ) | No. |
| Plaintiff, | ) | |
| v. | ) | Magistrate: |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT

1.      Your affiant has consulted with and reviewed the facts of the case with a health professional who the affiant reasonably believes is knowledgeable in the relevant issues involved in this particular action, practices within the last six years in the same area of health care or medicine that is at issue in this particular action and is qualified by experience in the subject of this case.

2.      Your affiant concludes, based on consulting with the above-described individual, that there is a reasonable and meritorious cause for the filing of this action.

3.      The reviewing health professional has determined in a written report, after a review of the medical records described in said report that there is a reasonable and meritorious cause for the filing of such action.

4.      The reviewing health professional is licensed to practice medicine in Illinois and is board certified in psychiatry.


FURTHER YOUR AFFIANT SAITH NOT.

_____
Michael P. Cogan

SUBSCRIBED and SWORN before
me this 6th day of October, 2011.

_____
NOTARY PUBLIC

Official Seal
Kimberly M Stefanek
Notary Public State of Illinois
My Commission Expires 03/23/2015